SUPERIOR COURT OF BUFFALO. March General Term, 1857. *Clinton, Verplank* and *Masten,* Justices.

## THE PEOPLE *v.* JAMES CAREY.

The conducting of a house in such a way as to disturb and disquiet the neighbors, or the carrying on of its business so as to tend to the corruption of public morals, is punishable as a nuisance.

It is no objection to an indictment for keeping a disorderly house, that it is charged in the same count that it is kept as a bawdy house, a tippling house, and a dancing house. It is not necessary, under such a count, to prove that all of such offences were committed, but the defendant should be convicted, if it is shown that either was permitted in such a manner and under such circumstances as to make the house disorderly and a nuisance.

MOTION for a new trial on a bill of exceptions. The defendant was convicted at the February criminal term, 1857, Mr. Justice Verplank presiding, of keeping a disorderly house. The indictment contained several counts, but the conviction was on the first one only. It charged that the defendant kept "a certain common, ill-governed and disorderly house, and in his said house, for his own lucre and gain, certain evil and ill-disposed persons, as well men as women, of evil name and fame, and of dishonest conversation, to frequent and come together, then and on the said other days and times, there unlawfully and willfully did cause and procure; and the said men and women in his said house, at unlawful times, as well in the night as in the day time, and on the said other days and times, there to be and remain, drinking, tippling, *dancing, whoring* and mis-

The People *v.* Carey.

behaving themselves, unlawfully and willfully did permit, to the great damage and common nuisance of the People of the State of New York, and against the peace of the People of the State of New York and their dignity." There was no evidence that the house was a bawdy one, nor that the persons entertained there were thieves or gamblers.

The house was three stories high, and on a public street in the city, and the defendant kept it as a boarding house, and had from ten to twenty boarders. In the first story he had a bar where he sold strong liquors, and the house was frequented principally by sailors and canal boatmen. In the room in the rear of the bar he had free dances nearly every weekday evening, which was commenced early and kept up late. He kept four servant girls, who danced with the men who came to the house. The men came in their working clothes and stogy boots and shoes. The evidence tended to show that there was much drinking at the bar during the dances, and occasionally quarrelling and fighting in and in front of the house, and that the dances, as conducted, were noisy and disturbed the neighborhood, which was populous. The court refused to instruct the jury that there was no evidence to sustain the first count of the indictment, but charged the jury that they might convict him under that count, "if the evidence showed that the house was conducted in such a manner as to disturb and disquiet the neighbors, or if said business was so carried on that it tended to the corruption of the public morals." The defendant excepted to this refusal and charge.

*Eli Cook*, for the defendant.

*A. Sawin* (District Attorney), for the People.

*By the Court*, CLINTON, J. The count upon which the defendant was convicted is the old form of an indictment against the keeper of a disorderly house, and is given by Archbold in his Criminal Practice, as the proper form of indictment against the keeper of a bawdy house, with a slight difference

as·to the conduct in the house of the evil and ill-disposed persons procured to come together there. This count adds "dancing" to the "drinking, tippling, whoring and misbehaving themselves," which are charged in the form furnished by the books. It contains the essentials of the count given by Mr. Chitty, in his Criminal Law, as sufficient at common law to charge a dancing house as a nuisance; and of the form approved·in Pennsylvania for charging a tippling house as a nuisance. (*The Commonwealth* v. *Stewart*, 1 *Serg. & Rawle*, 348.) The defendant's counsel seems to claim that the count ·is too broad, because it embodies distinct offences—the keeping of the house as a bawdy house, the keeping of it as a tippling house, and the keeping of it as a dancing house, to the nuisance of the public. But the law seems to make the keeping of a disorderly house, to the·nuisance of the public, the offence, and leaves the pleader to state the acts done in it which make it a nuisance, as fully as he pleases. Were it otherwise, as a bawdy house is frequently a nuisance not only in that respect, but as a tippling house and a place where disorderly people are procured to come together, and dance and disturb the neigborhood by their noises, the keeper would be liable to several distinct punishments for his manner of keeping the house. "It is not necessary that the jury should find a man guilty of everything charged in the indictment. It is sufficient if they find him guilty of part, provided that part be an indictable offence." ·(*Hunter* v. *The Commonwealth*, 2 *Serg. & Rawle*, 298.) It was not necessary, then, to a conviction in this case, that the jury should find that whoring was permitted in the house, provided they found that tippling or dancing, or both, was permitted in such a manner and under such circumstances as to make the house disorderly and a nuisance.

The court properly declined to direct the jury to acquit the ·defendant upon the evidence. There was plenty of evidence that the house was kept as a common tippling house, and was frequented by disorderly persons, who, by their drunkenness, quarrelling and noisy· dancing,· disturbed and disquieted the ·neighborhood. The court, in leaving this evidence to the jury,

The People *v.* Carey.

very properly instructed them to convict the defendant if they should find " that the house was conducted in such a manner as to disturb and disquiet the neighbors, or if its business was so carried on as to tend to the corruption of the public morals." The decision in *Hunter* v. *The Commonwealth* (2 *Serg. & Rawle*), does not militate against the propriety of the first branch of this charge. The indictment there charged the keeping of a common tippling house, and the verdict was, " guilty of keeping a disorderly house and disturbing his neighbors." The court said: " The keeping of a disorderly house is not indictable, unless it be laid as a common nuisance, because a house may be disorderly without being injurious to any but its inhabitants; and it is the injury done to the public which is the essence of the offence." The verdict was, of course, held bad. But this charge does not go to the form of the verdict, but had reference solely to the question of guilt under the indictment. There can be no question at this day that the disturbance of a neighborhood by the noises of disorderly persons in a house, habitually permitted in a house, is a nuisance.

The motion should be denied, and the criminal term advised to proceed to sentence.

Ordered accordingly.